UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DANIEL MENAN,

        Plaintiff,

    v.

U.S. BANK NATIONAL
ASSOCIATION, AS TRUSTEE
FOR FIRST FRANKLIN
MORTGAGE LOAN TRUST,
MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES
2006-FF2, SELECT PORTFOLIO
SERVICING, INC., and
DOES 1 through 50, inclusive,

        Defendants.

_____/

NO. CIV. S-12-0109 LKK/EFB

O R D E R

    In his First Amended Complaint, plaintiff Daniel Menan alleges that after he defaulted on his home mortgage, he reached an agreement with defendants to avoid the foreclosure of his home. Defendants promised to rescind the Notice of Default they had filed earlier if, in return, plaintiff timely made all agreed-to "forbearance" payments. Plaintiff alleges that he timely complied with his end of the bargain, or was excused from doing so, but that

1

1  defendants nevertheless failed to rescind the Notice of Default,

2  and instead had plaintiff's home sold at a foreclosure sale.  This

3  lawsuit seeks damages and a rescission of the sale.[1]  Plaintiff has

4  also filed a <u>lis pendens</u> against the property based upon the

5  existence of this lawsuit.

6      Defendants have moved to dismiss the lawsuit and to expunge

7  the <u>lis pendens</u>.  For the reasons that follow, both motions will

8  be denied.

9  **I.   THE COMPLAINT**

10     In 2005, plaintiff obtained an "interest only" adjustable rate

11 home loan for $1.19 million, from non-party lender First Franklin.[2]

12 Complaint (ECF No. 8) ¶ 7; Defendants' Request for Judicial Notice

13 ("RfJN") (ECF No. 13) Exh. A.[3]  The loan was secured by a Deed of

---

[1] Plaintiff alleges only state causes of action, and filed the case in state court.  Defendant removed the action, and this court exercises diversity jurisdiction over the matter.

[2] "Principal" payments were not to begin until five (5) years after the loan was made.

[3] Defendants request that the court take judicial notice of RfJN Exh. A.  However, it is not subject to judicial notice because this private contract is not "generally known," nor can its authenticity be determined by sources whose accuracy cannot reasonably be questioned.  <u>See</u> Fed. R. Evid. 201(b) (standards for judicial notice).  Defendant's request for judicial notice of Exhibit A is therefore **DENIED**.

However, the complaint refers to the loan document, even though it does not attach it as an exhibit (as plaintiff could have, under Rule 10(c)).  Defendants have proffered the document as the loan document referred to in the complaint, and plaintiff offers no objection.  In this circumstance, the "incorporation by reference" doctrine allows the court to consider Exh. A on this Rule 12(b)(6) motion without converting the motion into one for summary judgment.  <u>Davis v. HSBC Bank Nevada, N.A.</u>, 691 F.3d 1152, 1160 (9th Cir. 2012) ("courts may take into account 'documents whose contents are

1   Trust encumbering the property.  Complaint ¶ 8; RfJN Exh. B.[4]

2       In 2007, the Deed of Trust was assigned to defendant U.S.

3   Bank, N.A.  Complaint ¶ 8; RfJN Exh. C.  Defendant Select Portfolio

4   Servicing, Inc. ("SPS") is the "servicer" of the loan and is an

5   agent of the bank.  Complaint ¶ 3.  In March 2008, the Trustee of

6   the Deed of Trust recorded a Notice of Default against plaintiff's

7   home, on the basis of a claimed $41,383.66 arrearage by plaintiff

8   on his loan payments.  Complaint ¶ 9 & Exh. 1.[5]

9       In or before August 2009, plaintiff requested "a repayment

10  arrangement to reinstate" his mortgage loan.  See Complaint ¶ 11

11  & Exh. 2.  On or before August 6, 2009, defendant SPS (the agent

12  for defendant US Bank), approved plaintiff's request.  See

13  Complaint Exh. 3 (August 6, 2009 SPS's proposed "Forbearance to

14

15

16  _____

17  alleged in a complaint and whose authenticity no party questions,
    but which are not physically attached to the [plaintiff's]
18  pleading,'" and further, the court "'may treat such a document as
    part of the complaint, and thus may assume that its contents are
19  true for purposes of a motion to dismiss under Rule 12(b)(6)'"),
    quoting Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005), and
20  U.S. v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).  Accordingly,
    the court will consider Exhibit A of defendant's Request for
21  Judicial Notice under the "incorporation by reference" doctrine.

22      [4] Exhibits B-G of the RfJN purport to be documents filed with
    the county recorder, to which plaintiff does not object, and are
23  thus subject to judicial notice pursuant to Fed. R. Civ. P.
    201(b)(2) (facts that can accurately and readily be determined by
24  sources whose accuracy cannot reasonably be questioned).
    Accordingly, the request for judicial notice of these documents is
25  **GRANTED.**

26      [5] Exhibits to the complaint are considered to be a part of the
    complaint for all purposes.  See Fed. R. Civ. P. 10(c).

1  Modification Agreement" with payment schedule).[6]  SPS notified

2  plaintiff of the approval, by letter, on August 12, 2009, and that

3  a "payment schedule" was "agreed to." Complaint Exh. 2 (August 12,

4  2009 SPS letter notifying plaintiff of approval and referring to

5  the "proposed Forbearance Agreement").

6       Pursuant to the Forbearance Agreement, dated August 6, 2009,

7  plaintiff was required to send his first payment to SPS no later

8  than August 19, 2009, along with a signed copy of the Forbearance

9  Agreement.  Complaint ¶¶ 13, 16 & Exhs. 2 & 3 (¶¶ 3(a) & 15).[7]

10 Under the Agreement, SPS promised that if plaintiff made timely

11 payments as set forth in the Agreement, SPS (as agent for the

12 bank):

13       shall forbear from exercising its rights under the Loan
         Documents, including, without limitation, ... the
14       pursuit of the Foreclosure Proceedings, and the
         Foreclosure Proceedings shall be stayed, during the term
15       of this Agreement.

16 Complaint Exh. 3 ¶ 2.  SPS also agreed that:

17       Once Borrower has made all of the payments required
         under Section 3, Servicer will cause the notice of
18       default to be cancelled.

19  _____

20     [6] Plaintiff alleges that the bank's approval occurred on
    August 12, 2009, Complaint ¶ 11, an allegation that defendant does
21  not correct and indeed seeks to take advantage of here (by arguing
    that plaintiff sent his first payment before there was any
22  agreement).  However, it is an unavoidable inference from Exhibits
    2 & 3 attached to the complaint, that the approval came before the
23  bank's August 12, 2009 letter advising plaintiff of its approval,
    and before plaintiff wired a payment (on August 7, 2009) for the
24  exact amount (to the penny) of the first agreed-to payment for
    $49,009.10.

25     [7] "FAILURE TO RETURN THE EXECUTED AGREEMENT BY [August 19,
    2009] ... WILL ALLOW SERVICER TO TERMINATE THIS AGREEMENT."
26  Complaint Exh. 3 ¶ 15.

                                   4

1  Complaint Exh. 3 ¶ 11 (some emphasis in text).

2      The first payment, due on or before August 19, 2009, was for
3  $49,009.10.   Complaint ¶ 16 & Exhs. 2 & 3.   Plaintiff made his
4  first payment, for $49,009.10, by wire, on August 7, 2009, one day
5  after the date of the agreement, and twelve days before the
6  deadline.   Complaint ¶ 18 & Exh. 6.   Nevertheless, on August 13,
7  2009, the day after SPS notified plaintiff that it had approved his
8  request for a forbearance, SPS refused to accept plaintiff's
9  payment.   Complaint ¶ 18 & Exh. 5.   SPS instead asserted that
10 plaintiff had to pay the entire amount of arrearage, $194,666.02.
11 Complaint ¶ 18 & Exh. 5.

12     Plaintiff immediately called SPS to explain that his payment
13 should have been accepted per the August 6, 2009 Forbearance
14 Agreement.   Complaint ¶ 19.   In response, SPS told plaintiff, by
15 telephone, that he should refrain from signing and returning the
16 agreement while it investigated.   Id.   On August 31, 2009, SPS
17 (through its agents) called plaintiff to advise him that he was
18 correct about the agreement, that the funds were received, and that
19 he should sign and return the agreement.   Id.   Plaintiff signed and
20 returned the agreement that day.   Id.

21     Plaintiff then learned that his first payment had been refused
22 and returned.   Id.   He therefore called SPS again, which advised
23 him that it had now received the signed agreement and that he
24 should re-send his payment.   Id.   Plaintiff re-sent the payment by
25 wire, and thereupon made all subsequent payments in a timely
26 fashion, as called for in the Forbearance Agreement.   Id.

1    Nevertheless, on April 8, 2010, the Trustee recorded a Notice

2 of Trustee Sale, advising plaintiff that the Trustee would sell

3 plaintiff's home at auction.  RfJN Exh. F.  The Trustee then sold

4 the property at a foreclosure sale, to the highest bidder.

5 Complaint ¶ 21 & Exh. 4.

6    Plaintiff then filed this lawsuit asserting the following

7 claims: (1) rescission of Trustee's Deed Upon Sale; (2) breach of

8 contract; (3) wrongful foreclosure; and (4) unlawful business

9 practices in violation of Cal. Bus. & Prof. Code §§ 17200, <u>et seq.</u>

10 Plaintiff also recorded a <u>lis pendens</u> against the property, based

11 upon the pendency of this lawsuit.

12 **II.    STANDARDS**

13    **A.    Motion To Dismiss.**

14    A dismissal motion under Fed. R. Civ. P. 12(b)(6) challenges

15 a complaint's compliance with the federal pleading requirements.

16 Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and

17 plain statement of the claim showing that the pleader is entitled

18 to relief."  The complaint must give the defendant "'fair notice

19 of what the ... claim is and the grounds upon which it rests.'"

20 <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 555 (2007), <u>quoting</u> <u>Conley</u>

21 <u>v. Gibson</u>, 355 U.S. 41, 47 (1957).

22    To meet this requirement, the complaint must be supported by

23 factual allegations.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S.

24 Ct. 1937 (2009).  Moreover, this court "must accept as true all of

25 the factual allegations contained in the complaint."  <u>Erickson v.</u>

26

6

1   <u>Pardus</u>, 551 U.S. 89, 94 (2007).[8]

2       "While legal conclusions can provide the framework of a

3   complaint," neither legal conclusions nor conclusory statements are

4   themselves sufficient, and such statements are not entitled to a

5   presumption of truth.   <u>Iqbal</u>, 556 U.S. at 678, 129 S. Ct. at

6   1949-50.   <u>Iqbal</u> and <u>Twombly</u> therefore prescribe a two step process

7   for evaluation of motions to dismiss.   The court first identifies

8   the non-conclusory factual allegations, and then determines whether

9   these allegations, taken as true and construed in the light most

10  favorable to the plaintiff, "plausibly give rise to an entitlement

11  to relief."   <u>Iqbal</u>, 556 U.S. at 664, 129 S. Ct. at 1949-50.

12      "Plausibility," as it is used in <u>Twombly</u> and <u>Iqbal</u>, does not

13  refer to the likelihood that a pleader will succeed in proving the

14  allegations.  Instead, it refers to whether the non-conclusory

15  factual allegations, when assumed to be true, "allow[ ] the court

16  to draw the reasonable inference that the defendant is liable for

17  the misconduct alleged."   <u>Iqbal</u>, 556 U.S. at 663, 129 S. Ct. at

18  1949.   "The plausibility standard is not akin to a 'probability

19  requirement,' but it asks for more than a sheer possibility that

20  a defendant has acted unlawfully."  <u>Id.</u> (<u>quoting</u> <u>Twombly</u>, 550 U.S.

21

22  _____

23       [8] Citing <u>Twombly</u>, 556 U.S. at 555-56, <u>Neitzke v. Williams</u>, 490
    U.S. 319, 327 (1989) ("[w]hat Rule 12(b)(6) does not countenance
24  are dismissals based on a judge's disbelief of a complaint's
    factual allegations"), and <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236
25  (1974) ("it may appear on the face of the pleadings that a recovery
    is very remote and unlikely but that is not the test" under
26  Rule 12(b)(6)).

at 557).[9]  A complaint may fail to show a right to relief either

by lacking a cognizable legal theory or by lacking sufficient facts

alleged under a cognizable legal theory.  Balistreri v. Pacifica

Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

**B.   Motion To Expunge Lis Pendens.**

Under California law, a notis of lis pendens must be expunged

"if the court finds that the pleading on which the notice is based

does not contain a real property claim." Cal. Code Civ. Proc. §

405.31.

**III. ANALYSIS**

**A.   Rescission of Trustee's Sale Based Upon Breach of Contract.**

Plaintiff alleges that defendants breached their "Forbearance

to Modification Agreement."   See Complaint Exh. 3.   Under that

agreement: "Once Borrower has made all of the payments required

---

[9] Twombly imposed an apparently new "plausibility" gloss on the previously well-known Rule 8(a) standard, and retired the long-established "no set of facts" Rule 12(b)(6) standard of Conley v. Gibson, 355 U.S. 41 (1957), although it did not overrule that case outright.  See Moss v. U.S. Secret Service, 572 F.3d 962, 968 (9th Cir. 2009) (the Twombly Court "cautioned that it was not outright overruling Conley ...," although it was retiring the "no set of facts" language from Conley).   The Ninth Circuit has acknowledged the difficulty of applying the resulting standard, given the "perplexing" mix of standards the Supreme Court has applied in recent cases.  See Starr v. Baca, 652 F.3d 1202, 1215 (9th Cir. 2011) (comparing the Court's application of the "original, more lenient version of Rule 8(a)" in Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) and Erickson v. Pardus, 551 U.S. 89 (2007) (per curiam), with the seemingly "higher pleading standard" in Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005), Twombly and Iqbal), rehearing en banc denied, 659 F.3d 850 (9th Cir. 2011).  See also Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (applying the "no set of facts" standard to a Section 1983 case).

1  under <u>Section 3</u>, Services will cause the notice of default to be

2  cancelled." Defendant moves to dismiss the rescission claim solely

3  on the ground that plaintiff has failed to allege a breach of the

4  Forbearance Agreement.[10]

5      The elements of a cause of action for breach of contract are:

6          (1) the existence of the contract, (2) plaintiff's
   performance    or    excuse    for    nonperformance,
7          (3) defendant's breach, and (4) the resulting damages to
   the plaintiff.

8

9  <u>Oasis West Realty, LLC v. Goldman</u>, 51 Cal. 4th 811, 821 (2011).

10 Defendants assert that plaintiff did not satisfy even one of the

11 elements of this cause of action.  The court however, finds that

12 plaintiff properly alleged all four in his complaint.

13              **1.   The existence of the contract.**

14     Defendants argue that they had no contract with plaintiff.

15 However, they do not deny the existence of a document dated August

16 6, 2009, and entitled "Forbearance to Modification Agreement," the

17 face of which states that it is an agreement between plaintiff and

18 SPS.  For purposes of this motion to dismiss, the court infers from

19 the document that the parties had an agreement – even if it had yet

20 to be reduced to a fully executed writing – as set forth in that

21 document, as of August 6, 2009.[11]

22 _____

23     [10] Defendant does not, for example, argue that rescission is
   not  a  proper  remedy  for  breach  of  contract,  and  the  court
24 accordingly will not delve into this area of state law without the
   assistance of the parties.

25     [11] Defendants do not argue that there is any legal impediment
   to  the  formation  of  an  such  an  agreement.   The  Forbearance
26 Agreement would be subject to the statute of frauds if it modified

1        **2.   Plaintiff's Performance.**

2        Defendants argue that plaintiff failed to perform the

3  contract.   They argue that plaintiff made his first forbearance

4  payment too early, and that he signed the Agreement too late.

5            **a.   Forbearance Payments.**

6        As recounted above, plaintiff alleges the plaintiff and

7  defendants reached an agreement no later than August 6, 2009, the

8  date of the Forbearance Agreement.   According to the Agreement,

9  plaintiff was required to make a payment of $49,009.10 no later

10 than August 19, 2009, and to return a signed copy of the Agreement

11 no later than that same date.   Complaint ¶ 16.   He had no other

12 obligations under the agreement that had to be performed before

13 August 19th.

14       Plaintiff alleges that he wired his payment for $49,009.10 on

15 August 7, 2009, the day after the date of the Agreement.   This

16 payment constituted proper performance of plaintiff's obligation.

17 It was not too early.   It was made the day after the agreement came

18 into existence, and prior to the August 19, 2009 deadline.

19       Defendants assert that the agreement came into existence on

20 August 12, 2009, the date they sent plaintiff a letter stating his

21 request for "a repayment arrangement" was approved, and sent him

22 ────────────────────

23 the deed of trust (which is itself subject to the statute of
   frauds, and thus must be in writing).   See Secrest v. Security Nat.
24 Mortg. Loan Trust 2002-2, 167 Cal. App. 4th 544, 553 (4th Dist.
   2008) ("An agreement to modify a contract that is subject to the
25 statute of frauds is also subject to the statute of frauds").   This
   Agreement does not modify the deed of trust.   Rather, it states
26 that defendants will forbear from exercising their rights under the
   deed of trust.

the Forbearance Agreement (dated August 6, 2009). Complaint Exh. 2. However, nothing in that letter states that the effective date of the Forbearance Agreement is the date of the letter, or indeed that it was anything other than August 6, 2009, the date stated in the Agreement. Indeed, defendants' letter states that upon signing the Agreement, which was sent with the August 12, 2009 letter, plaintiff agreed to its terms and conditions. Complaint Exh. 2. One of those terms was the date of the Agreement, namely, August 6, 2009.

The complaint further alleges that plaintiff made all subsequent forbearance payments in a timely fashion. Complaint ¶ 19.

### b. Signing and Returning the Agreement.

By August 7, 2009 then, plaintiff had carried out the first of his obligations. He still had until August 19, 2009 to do the second, namely to sign and return the Agreement to defendants. On August 13, 2009 however, SPS advised plaintiff that it was rejecting his $49,009.10 payment, and it did so unconditionally. Complaint Exh. 5. At this point, SPS was in breach of the Forbearance Agreement. This breach excused plaintiff's obligation to sign and return the agreement by August 19th. Indeed, it would have made no sense for plaintiff to sign and return an agreement defendants had already breached.

Instead of standing on his rights and demanding that defendant withdraw the notice of cancellation at that point however, plaintiff called SPS, and advised it of its error. Complaint ¶ 19.

1  SPS's agents recognized their error, and through subsequent
2  negotiations with plaintiff, agreed that plaintiff could sign the
3  Agreement on August 31, 2009, and return it, which he did.  <u>Id.</u>
4  He also timely submitted a replacement payment for the improperly
5  rejected first payment.  <u>Id.</u>

6      Accordingly, for purposes of this dismissal motion, plaintiff
7  fully and timely complied with all of his obligations under the
8  Forbearance Agreement.

9                    **c.   Defendant's Breach.**

10     As discussed above, plaintiff alleges that he fully performed
11 under the Forbearance Agreement, or was excused from timely
12 performance by defendant's breach.  Defendant then breached the
13 agreement by failing to "cause the notice of default to be
14 cancelled," as it specifically promised to do in the Forbearance
15 Agreement.  Complaint ¶ 19.

16     This breach is critical to plaintiff, since as a direct
17 result, the Trustee was able to rely upon the still-extant Notice
18 of Default to sell the property at auction.  <u>See</u> RfJN Exh. F
19 (Notice of Trustee's Sale).  Had the Notice of Default been
20 cancelled, as promised, it appears that the Trustee could not have
21 conducted the foreclosure sale.  <u>See</u> Cal. Civ. Code § 2924(a)(1)
22 (recording of notice of default is required before the trustee's
23 power of sale can be exercised).

24                  **d.   Plaintiff's Damages.**

25     As the court has found, plaintiff's complaint sufficiently
26 alleges that plaintiff made all the forbearance payments in an

                                 12

1    attempt to save his home.  These forbearance payments however,

2    apparently did not cure the delinquency in his loan payments.  When

3    defendants sold plaintiff's home at auction, therefore, those

4    payments were simply lost, as they were paid over to defendant in

5    exchange for a broken promise to cancel the Notice of Default.

6    Although plaintiff does not specifically allege "damages," the

7    court infers from the complaint that these payments were among his

8    damages.

9         Accordingly, the court finds that plaintiff has sufficiently

10   alleged breach of the Forbearance Agreement.  Defendant's motion

11   to dismiss the rescission claim for failure to allege a breach of

12   contract will therefore be denied.

13        **B.   Breach of Contract To Modify Loan Terms.**

14        The title of plaintiff's second cause of action indicates that

15   he alleges breach of contract for defendant's failure to modify his

16   loan terms.  Defendant correctly points out that there is no such

17   contract language nor any other allegation of any such agreement.

18   However, the substantive allegations of this breach claim make

19   clear that plaintiff is suing for defendant's failure to "consider"

20   plaintiff for a loan modification, and to do so in good faith.

21        Defendants' obligation to consider plaintiff for a loan

22   modification arises from the Forbearance Agreement, discussed

23   above.  In that Agreement defendant SPS promises that if plaintiff

24   timely makes the forbearance payments, SPS

25        will consider reviewing Borrower for a modification of
         Borrower's loan terms to a more affordable monthly
26        payment amount.

13

Complaint Exh. 3 ¶ 2.2. As discussed above, plaintiff did timely make his forbearance payments, thus triggering defendant's contractual obligation to consider plaintiff for modified monthly payments. The complaint goes on to allege that defendant breached this obligation by failing to consider reviewing him for the modification, and to do so in good faith.

Plaintiff's allegations in this regard are: (1) as discussed above, defendant breached that part of this same agreement in which it promised to rescind the notice of default; (2) defendant's agent promised plaintiff that SPS would accept a modified payment of $4,645 per month if plaintiff made his forbearance payments and met other qualifications; (3) plaintiff timely made his forbearance payments and satisfied the other qualifications; (4) defendant accepted those modified payments for months; and (5) defendant, without explanation for why it was changing the terms of the loan modification previously offered by its agent, raised the amount of the modified payment to $7,100 per month. These allegations are sufficient to support plaintiff's claim that defendant breached its promise to consider reviewing him for a loan modification, and to do so in good faith.[12]

Accordingly, the motion to dismiss the second claim will be denied.

_____

[12] The court does not, of course, hold that defendant was obligated to provide a loan modification in the amount preferred by plaintiff. However, it did contractually obligate itself to consider plaintiff for a modified loan, and to do so in good faith. The complaint adequately alleges that defendant failed to satisfy this obligation.

1          C.     **Wrongful Foreclosure.**

2          "California recognizes a cause of action for wrongful

3     foreclosure under equitable principles." <u>Barroso v. Ocwen Loan</u>

4     <u>Servicing, LLC</u>, 208 Cal. App. 4th 1001, 1016 (2nd Dist. 2012).

5     Plaintiff's theory here is that the foreclosure sale should not

6     have taken place at all, since defendant was contractually

7     obligated to cancel the Notice of Default.

8          Defendants argue that plaintiff's claim for wrongful

9     foreclosure must be dismissed solely on the ground that plaintiff

10    was required to tender the full amount of his arrearage, which he

11    has not done.   In support, defendant cites <u>Sierra-Bay Fed. Land</u>

12    <u>Bank Assn. v. Superior Court</u>, 227 Cal. App. 3d 318, 337 (3rd Dist.

13    1991).[13]  However, <u>Sierra-Bay</u> involved a claim for negligence, not

14    wrongful foreclosure nor rescission of a trustee's sale.   <u>Id.</u> At

15    337 ("plaintiff does not seek an equitable decree setting aside the

16    trustees' sales").   Its discussion of the elements of wrongful

17    foreclosure are therefore <u>dicta</u>.

18         Defendant also cites <u>Arnolds Management Corp. v. Eischen</u>, 158

19    Cal. App. 3d 575 (2nd Dist. 1984) for the proposition that a full

20    tender of the arrearage is needed "to set aside a trustee's sale

21    for irregularities in sale notice or procedure." <u>Id.</u>, at 578.   In

22    <u>Arnolds</u>, there was no question about whether the trustee's sale

23    _____

24         [13] Defendant also relies upon <u>Guerrero v. Greenpoint Mortg.</u>
      <u>Funding, Inc.</u>, 403 Fed. Appx. 154 (9th Cir. 2010), an unpublished,
      which addressed plaintiff's lack of "standing" to assert a wrongful
25    foreclosure case.   This unpublished order of the Ninth Circuit is
      "not precedent," Ninth Cir. R. 36-3(a), and it is therefore unclear
26    why defendant cites it.

                                   15

1    should have taken place at all – the key allegation of this

2    lawsuit.  The trustee in <u>Arnold</u> told plaintiff that the trustee's

3    sale was to take place on July 28, 192, when in fact, it was

4    scheduled for May 27, 1982, and it took place on the May date.  The

5    plaintiff's lawsuit was based upon this irregularity of notice.

6    It was in this context that the court held that "an action to set

7    aside a trustee's sale for irregularities in sale notice or

8    procedure should be accompanied by an offer to pay the full amount

9    of the debt for which the property was security."  <u>Id.</u> At 578.

10   Defendants also rely upon <u>Abdallah v. United Savings Bank</u>, 43

11   Cal. App. 4th 1101, 1109 (1st Dist. 1996), <u>cert. denied</u>, 519 U.S.

12   1081 (1997), which similarly addresses the tender requirement in

13   the context of an irregularity in notice procedure, and a failure

14   to postpone the sale to obtain a better price.  It does not address

15   a claim – as pressed here – that the foreclosure sale itself was

16   wrongful and should not have occurred <u>at all</u> because defendants

17   were contractually obligated not to conduct the sale.

18   Indeed, none of the cases defendants rely upon require tender

19   when there is a challenge to the trustee's right to conduct the

20   sale at all.  Rather, they require tender when there is an alleged

21   irregularity in the notice or procedure of the sale.[14]

22

23   [14] <u>See</u> <u>Karlsen v. American Sav. & Loan Assn.</u>, 15 Cal. App. 3d
     112, 121 (1971) (public announcement of sale not properly given,
24   violation of statute regarding sale procedure, and failure to
     postpone sale); <u>FPCI RE-HAB 01 v. E & G Investments, Ltd.</u>, 207 Cal.
25   App. 3d 1018, 1020 (Cal.App.2.Dist.1989) (plaintiff alleges that
     defendant "conspired to conduct the sale in a manner calculated to
26   'chill the bidding' and permit E & G to purchase the property at
     lower than market value and to cause RE-HAB to lose its security

1    Here, plaintiff does not base his claim on an "irregularity

2  of notice or procedure" in the trustee's sale.  Rather, he bases

3  his claim on his assertion that the trustee had no right to conduct

4  the sale at all, since (1) defendants were contractually obligated

5  not to permit the sale by their trustee, and (2) defendants were

6  contractually obligated to withdraw the Notice of Default, the

7  existence of which was the legal predicate of the trustee's sale.

8    The law does not require plaintiff to tender the purchase

9  price to a trustee who has no right to sell the property at all.

10  In Bank of America, N.A. v. La Jolla Group II, 129 Cal. App. 4th

11  706 (5th Dist. 2005), for example, the trustee had no right to

12  _____

13  interest"); Saldate v. Wilshire Credit Corp., 711 F. Supp. 2d 1126,
    1139 (E.D. Cal. 2010) (O'Neill, J.) (failure of trustee to possess
14  promissory note – which turned out to be irrelevant, anyway – and
    failure "'to give proper notice of the Notice of Default'");
15  Stebley v. Litton Loan Servicing, LLP, 202 Cal. App. 4th 522, 526
    (3rd Dist. 2011) (failure "to fully and fairly explore alternatives
16  to foreclosure").

17  See also, Chavez v. Recontrust Co., 2008 WL 5210893 at *6 (E.D.
    Cal. 2008) (Wanger, J.), in which the court denied the request to
18  set aside a trustee's sale stating, in toto: "'[T]he law is
    long-established that a trustor or his successor must tender the
19  obligation in full as a prerequisite to challenge of the
    foreclosure sale,'" quoting, United States Cold Storage v. Great
20  Western Savings & Loan Assn., 165 Cal. App. 3d 1214, 1222, 212
    Cal.Rptr. 232 (1985).  Since Chavez relied entirely on the quoted
21  statement from a state case, Cold Storage, this court looks to the
    state case for guidance.  Cold Storage, as with all the other
22  cases, addresses tender in the context of allegedly defective
    notice, stating: "It would be futile to set aside a foreclosure
23  sale on the technical ground that notice was improper, if the party
    making the challenge did not first make full tender and thereby
24  establish his ability to purchase the property." Cold Storage, 165
    Cal. App. 3d at 1225.  To the degree Chavez may be read to require
25  a full tender to a trustee who had no right to conduct the
    trustee's sale in the first place, this court would respectfully
26  decline to follow it.

1   conduct the foreclosure sale because the homeowner had fully cured

2   the default.   The lenders simply forgot to tell the trustee that

3   the default had been cured.   There is not even a mention of a

4   tender requirement in the case.  Such a requirement would have made

5   no sense, since the trustee had no right to conduct the sale at

6   all.[15]

7        In this case, it may be that plaintiff has not cured the

8   default.[16]   However, he does have a contractual promise from SPS to

9   cancel the Notice of Default if plaintiff satisfied the Forbearance

10  Agreement.   It would be bizarre to require plaintiff to tender the

11  full amount of arrearage at a foreclosure sale which should not be

12  taking place at all.

13       Accordingly, defendants' assertion that plaintiff has not made

14  a tender of the full arrearage is not a basis for dismissal of the

15  wrongful foreclosure claim.

16       **D.   Unlawful Business Practices.**

17       Defendant argues that the unlawful business practices act

18  fails because it is dependent upon the other three claims of the

19  complaint, which, in its view, are meritless.   Since those claims

20  are not meritless, and will not be dismissed, this claim also will

21  not be dismissed.

22       Defendant also asserts that plaintiff was in error to rely on

23  ───────────────────────

24       [15] It also would have been impossible, since there was no
     arrearage, the default having been cured.

25       [16] The Forbearance Agreement states: "The payments under this
26  Agreement do not include amounts necessary to cure the amount in
     arrears."  Complaint Exh. 3 (Recitals ¶ E).

1  the prior allegations of the complaint in making the unfair

2  business practices claim.   The court disagrees.   Plaintiff's

3  practice is fully in accordance with the "short and plain"

4  statement requirement of Fed. R. Civ. P. 8(a).  Plaintiff is not

5  required to re-assert and re-allege all the prior allegations, and

6  indeed was right not to do so.  Those prior allegations make clear

7  what wrong was done to plaintiff and the harm he suffered.

8  Defendant's assertion that plaintiff failed to allege loss of any

9  money or property is simply wrong, as plaintiff has clearly alleged

10 the loss of his home arising from defendants' breach of their

11 contractual obligation to rescind the notice of default, and to

12 consider him (in good faith), for a loan modification.

13        **E.    The Lis Pendens.**

14        Defendants move to expunge the <u>lis pendens</u> which plaintiff

15 filed against the property.  Defendants' sole basis is that the

16 lawsuit, which is the basis of the <u>lis pendens</u>, is without merit.

17 As discussed above however, the lawsuit, which contains a proper

18 real estate claim for wrongful foreclosure, is meritorious, or at

19 least, it is not dismissible at this point.   Accordingly, the

20 motion to expunge will be denied.

21 **IV.   CONCLUSION**

22        For the reasons set forth above:

23        1.   Defendant's motion to dismiss (ECF No. 12), is **DENIED**;

24 and

25        2.Defendant's motion to expunge the <u>lis pendens</u> (ECF No. 19),

26 is **DENIED**.

1   IT IS SO ORDERED.

2   DATED:   February 13, 2013.

3

4

5

6   LAWRENCE K. KARLTON
    SENIOR JUDGE
7   UNITED STATES DISTRICT COURT

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

20