UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DANIEL MENAN,

         Plaintiff,

    v.

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR FIRST FRANKLIN MORTGAGE LOAN TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-FF2, SELECT PORTFOLIO SERVICING, INC., and DOES 1 through 50, inclusive,

         Defendants.

NO. CIV. S-12-0109 LKK/EFB

O R D E R

In his First Amended Complaint, plaintiff Daniel Menan alleges that after he defaulted on his home mortgage, he reached an agreement with defendants to avoid the foreclosure of his home. Defendants promised to rescind the Notice of Default they had filed earlier if, in return, plaintiff timely made all agreed-to "forbearance" payments. Plaintiff alleges that he timely complied with his end of the bargain, or was excused from doing so, but that

1

1  defendants nevertheless failed to rescind the Notice of Default,
2  and instead had plaintiff's home sold at a foreclosure sale.  This
3  lawsuit seeks damages and a rescission of the sale.[1]  Plaintiff has
4  also filed a <u>lis pendens</u> against the property based upon the
5  existence of this lawsuit.

6      Defendants have moved to dismiss the lawsuit and to expunge
7  the <u>lis pendens</u>.  For the reasons that follow, both motions will
8  be denied.

9  **I.   THE COMPLAINT**

10     In 2005, plaintiff obtained an "interest only" adjustable rate
11 home loan for $1.19 million, from non-party lender First Franklin.[2]
12 Complaint (ECF No. 8) ¶ 7; Defendants' Request for Judicial Notice
13 ("RfJN") (ECF No. 13) Exh. A.[3]  The loan was secured by a Deed of

---

[1] Plaintiff alleges only state causes of action, and filed the case in state court.  Defendant removed the action, and this court exercises diversity jurisdiction over the matter.

[2] "Principal" payments were not to begin until five (5) years after the loan was made.

[3] Defendants request that the court take judicial notice of RfJN Exh. A.  However, it is not subject to judicial notice because this private contract is not "generally known," nor can its authenticity be determined by sources whose accuracy cannot reasonably be questioned.  <u>See</u> Fed. R. Evid. 201(b) (standards for judicial notice).  Defendant's request for judicial notice of Exhibit A is therefore **DENIED**.

However, the complaint refers to the loan document, even though it does not attach it as an exhibit (as plaintiff could have, under Rule 10(c)).  Defendants have proffered the document as the loan document referred to in the complaint, and plaintiff offers no objection.  In this circumstance, the "incorporation by reference" doctrine allows the court to consider Exh. A on this Rule 12(b)(6) motion without converting the motion into one for summary judgment.  <u>Davis v. HSBC Bank Nevada, N.A.</u>, 691 F.3d 1152, 1160 (9th Cir. 2012) ("courts may take into account 'documents whose contents are

2

1  Trust encumbering the property.  Complaint ¶ 8; RfJN Exh. B.[4]

2      In 2007, the Deed of Trust was assigned to defendant U.S.
3  Bank, N.A.  Complaint ¶ 8; RfJN Exh. C.  Defendant Select Portfolio
4  Servicing, Inc. ("SPS") is the "servicer" of the loan and is an
5  agent of the bank.  Complaint ¶ 3.  In March 2008, the Trustee of
6  the Deed of Trust recorded a Notice of Default against plaintiff's
7  home, on the basis of a claimed $41,383.66 arrearage by plaintiff
8  on his loan payments.  Complaint ¶ 9 & Exh. 1.[5]

9      In or before August 2009, plaintiff requested "a repayment
10 arrangement to reinstate" his mortgage loan.  See Complaint ¶ 11
11 & Exh. 2.  On or before August 6, 2009, defendant SPS (the agent
12 for defendant US Bank), approved plaintiff's request.  See
13 Complaint Exh. 3 (August 6, 2009 SPS's proposed "Forbearance to

---

alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading,'" and further, the court "'may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)'"), quoting Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005), and U.S. v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).  Accordingly, the court will consider Exhibit A of defendant's Request for Judicial Notice under the "incorporation by reference" doctrine.

[4] Exhibits B-G of the RfJN purport to be documents filed with the county recorder, to which plaintiff does not object, and are thus subject to judicial notice pursuant to Fed. R. Civ. P. 201(b)(2) (facts that can accurately and readily be determined by sources whose accuracy cannot reasonably be questioned). Accordingly, the request for judicial notice of these documents is **GRANTED.**

[5] Exhibits to the complaint are considered to be a part of the complaint for all purposes.  See Fed. R. Civ. P. 10(c).

3

Modification Agreement" with payment schedule).[6]  SPS notified plaintiff of the approval, by letter, on August 12, 2009, and that a "payment schedule" was "agreed to." Complaint Exh. 2 (August 12, 2009 SPS letter notifying plaintiff of approval and referring to the "proposed Forbearance Agreement").

Pursuant to the Forbearance Agreement, dated August 6, 2009, plaintiff was required to send his first payment to SPS no later than August 19, 2009, along with a signed copy of the Forbearance Agreement. Complaint ¶¶ 13, 16 & Exhs. 2 & 3 (¶¶ 3(a) & 15).[7] Under the Agreement, SPS promised that if plaintiff made timely payments as set forth in the Agreement, SPS (as agent for the bank):

> shall forbear from exercising its rights under the Loan Documents, including, without limitation, ... the pursuit of the Foreclosure Proceedings, and the Foreclosure Proceedings shall be stayed, during the term of this Agreement.

Complaint Exh. 3 ¶ 2.  SPS also agreed that:

> Once Borrower has made all of the payments required under <u>Section 3</u>, <u>Servicer will cause the notice of default to be cancelled</u>.

---

[6] Plaintiff alleges that the bank's approval occurred on August 12, 2009, Complaint ¶ 11, an allegation that defendant does not correct and indeed seeks to take advantage of here (by arguing that plaintiff sent his first payment before there was any agreement). However, it is an unavoidable inference from Exhibits 2 & 3 attached to the complaint, that the approval came <u>before</u> the bank's August 12, 2009 letter advising plaintiff of its approval, and <u>before</u> plaintiff wired a payment (on August 7, 2009) for the exact amount (to the penny) of the first agreed-to payment for $49,009.10.

[7] "FAILURE TO RETURN THE EXECUTED AGREEMENT BY [August 19, 2009] ... WILL ALLOW SERVICER TO TERMINATE THIS AGREEMENT." Complaint Exh. 3 ¶ 15.

4

Complaint Exh. 3 ¶ 11 (some emphasis in text).

The first payment, due on or before August 19, 2009, was for $49,009.10. Complaint ¶ 16 & Exhs. 2 & 3. Plaintiff made his first payment, for $49,009.10, by wire, on August 7, 2009, one day after the date of the agreement, and twelve days before the deadline. Complaint ¶ 18 & Exh. 6. Nevertheless, on August 13, 2009, the day after SPS notified plaintiff that it had approved his request for a forbearance, SPS refused to accept plaintiff's payment. Complaint ¶ 18 & Exh. 5. SPS instead asserted that plaintiff had to pay the entire amount of arrearage, $194,666.02. Complaint ¶ 18 & Exh. 5.

Plaintiff immediately called SPS to explain that his payment should have been accepted per the August 6, 2009 Forbearance Agreement. Complaint ¶ 19. In response, SPS told plaintiff, by telephone, that he should refrain from signing and returning the agreement while it investigated. Id. On August 31, 2009, SPS (through its agents) called plaintiff to advise him that he was correct about the agreement, that the funds were received, and that he should sign and return the agreement. Id. Plaintiff signed and returned the agreement that day. Id.

Plaintiff then learned that his first payment had been refused and returned. Id. He therefore called SPS again, which advised him that it had now received the signed agreement and that he should re-send his payment. Id. Plaintiff re-sent the payment by wire, and thereupon made all subsequent payments in a timely fashion, as called for in the Forbearance Agreement. Id.

5

1  Nevertheless, on April 8, 2010, the Trustee recorded a Notice
2 of Trustee Sale, advising plaintiff that the Trustee would sell
3 plaintiff's home at auction.  RfJN Exh. F.  The Trustee then sold
4 the property at a foreclosure sale, to the highest bidder.
5 Complaint ¶ 21 & Exh. 4.
6  Plaintiff then filed this lawsuit asserting the following
7 claims: (1) rescission of Trustee's Deed Upon Sale; (2) breach of
8 contract; (3) wrongful foreclosure; and (4) unlawful business
9 practices in violation of Cal. Bus. & Prof. Code §§ 17200, et seq.
10 Plaintiff also recorded a lis pendens against the property, based
11 upon the pendency of this lawsuit.

12 **II.  STANDARDS**
13   **A.  Motion To Dismiss.**
14  A dismissal motion under Fed. R. Civ. P. 12(b)(6) challenges
15 a complaint's compliance with the federal pleading requirements.
16 Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and
17 plain statement of the claim showing that the pleader is entitled
18 to relief."  The complaint must give the defendant "'fair notice
19 of what the ... claim is and the grounds upon which it rests.'"
20 Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007), quoting Conley
21 v. Gibson, 355 U.S. 41, 47 (1957).
22  To meet this requirement, the complaint must be supported by
23 factual allegations.  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.
24 Ct. 1937 (2009).  Moreover, this court "must accept as true all of
25 the factual allegations contained in the complaint."  Erickson v.
26

6

Pardus, 551 U.S. 89, 94 (2007).[8]

"While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949-50. Iqbal and Twombly therefore prescribe a two step process for evaluation of motions to dismiss. The court first identifies the non-conclusory factual allegations, and then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 664, 129 S. Ct. at 1949-50.

"Plausibility," as it is used in Twombly and Iqbal, does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 663, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S.

---

[8] Citing Twombly, 556 U.S. at 555-56, Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("[w]hat Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations"), and Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test" under Rule 12(b)(6)).

7

at 557).[9]  A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory.  <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990).

**B.    Motion To Expunge <u>Lis Pendens</u>.**

Under California law, a notis of <u>lis pendens</u> must be expunged "if the court finds that the pleading on which the notice is based does not contain a real property claim." Cal. Code Civ. Proc. § 405.31.

**III. ANALYSIS**

    **A. Rescission of Trustee's Sale Based Upon Breach of Contract.**

Plaintiff alleges that defendants breached their "Forbearance to Modification Agreement."  <u>See</u> Complaint Exh. 3.  Under that agreement: "Once Borrower has made all of the payments required

---

[9] <u>Twombly</u> imposed an apparently new "plausibility" gloss on the previously well-known Rule 8(a) standard, and retired the long-established "no set of facts" Rule 12(b)(6) standard of <u>Conley v. Gibson</u>, 355 U.S. 41 (1957), although it did not overrule that case outright.  <u>See</u> <u>Moss v. U.S. Secret Service</u>, 572 F.3d 962, 968 (9th Cir. 2009) (the <u>Twombly</u> Court "cautioned that it was not outright overruling <u>Conley</u> ...," although it was retiring the "no set of facts" language from <u>Conley</u>).  The Ninth Circuit has acknowledged the difficulty of applying the resulting standard, given the "perplexing" mix of standards the Supreme Court has applied in recent cases.  <u>See</u> <u>Starr v. Baca</u>, 652 F.3d 1202, 1215 (9th Cir. 2011) (comparing the Court's application of the "original, more lenient version of Rule 8(a)" in <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506 (2002) and <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007) (<u>per curiam</u>), with the seemingly "higher pleading standard" in <u>Dura Pharmaceuticals, Inc. v. Broudo</u>, 544 U.S. 336 (2005), <u>Twombly</u> and <u>Iqbal</u>), <u>rehearing en banc denied</u>, 659 F.3d 850 (9th Cir. 2011).  See also <u>Cook v. Brewer</u>, 637 F.3d 1002, 1004 (9th Cir. 2011) (applying the "no set of facts" standard to a Section 1983 case).

under Section 3, Services will cause the notice of default to be cancelled." Defendant moves to dismiss the rescission claim solely on the ground that plaintiff has failed to allege a breach of the Forbearance Agreement.[10]

The elements of a cause of action for breach of contract are:

(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff.

Oasis West Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (2011). Defendants assert that plaintiff did not satisfy even one of the elements of this cause of action. The court however, finds that plaintiff properly alleged all four in his complaint.

**1. The existence of the contract.**

Defendants argue that they had no contract with plaintiff. However, they do not deny the existence of a document dated August 6, 2009, and entitled "Forbearance to Modification Agreement," the face of which states that it is an agreement between plaintiff and SPS. For purposes of this motion to dismiss, the court infers from the document that the parties had an agreement – even if it had yet to be reduced to a fully executed writing – as set forth in that document, as of August 6, 2009.[11]

---

[10] Defendant does not, for example, argue that rescission is not a proper remedy for breach of contract, and the court accordingly will not delve into this area of state law without the assistance of the parties.

[11] Defendants do not argue that there is any legal impediment to the formation of an such an agreement. The Forbearance Agreement would be subject to the statute of frauds if it modified

9

### 2. Plaintiff's Performance.

Defendants argue that plaintiff failed to perform the contract. They argue that plaintiff made his first forbearance payment too early, and that he signed the Agreement too late.

#### a. Forbearance Payments.

As recounted above, plaintiff alleges the plaintiff and defendants reached an agreement no later than August 6, 2009, the date of the Forbearance Agreement. According to the Agreement, plaintiff was required to make a payment of $49,009.10 no later than August 19, 2009, and to return a signed copy of the Agreement no later than that same date. Complaint ¶ 16. He had no other obligations under the agreement that had to be performed before August 19th.

Plaintiff alleges that he wired his payment for $49,009.10 on August 7, 2009, the day after the date of the Agreement. This payment constituted proper performance of plaintiff's obligation. It was not too early. It was made the day after the agreement came into existence, and prior to the August 19, 2009 deadline.

Defendants assert that the agreement came into existence on August 12, 2009, the date they sent plaintiff a letter stating his request for "a repayment arrangement" was approved, and sent him

---

the deed of trust (which is itself subject to the statute of frauds, and thus must be in writing). See Secrest v. Security Nat. Mortg. Loan Trust 2002-2, 167 Cal. App. 4th 544, 553 (4th Dist. 2008) ("An agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds"). This Agreement does not modify the deed of trust. Rather, it states that defendants will forbear from exercising their rights under the deed of trust.

the Forbearance Agreement (dated August 6, 2009). Complaint Exh. 2. However, nothing in that letter states that the effective date of the Forbearance Agreement is the date of the letter, or indeed that it was anything other than August 6, 2009, the date stated in the Agreement. Indeed, defendants' letter states that upon signing the Agreement, which was sent with the August 12, 2009 letter, plaintiff agreed to its terms and conditions. Complaint Exh. 2. One of those terms was the date of the Agreement, namely, August 6, 2009.

The complaint further alleges that plaintiff made all subsequent forbearance payments in a timely fashion. Complaint ¶ 19.

### b. Signing and Returning the Agreement.

By August 7, 2009 then, plaintiff had carried out the first of his obligations. He still had until August 19, 2009 to do the second, namely to sign and return the Agreement to defendants. On August 13, 2009 however, SPS advised plaintiff that it was rejecting his $49,009.10 payment, and it did so unconditionally. Complaint Exh. 5. At this point, SPS was in breach of the Forbearance Agreement. This breach excused plaintiff's obligation to sign and return the agreement by August 19th. Indeed, it would have made no sense for plaintiff to sign and return an agreement defendants had already breached.

Instead of standing on his rights and demanding that defendant withdraw the notice of cancellation at that point however, plaintiff called SPS, and advised it of its error. Complaint ¶ 19.

1  SPS's agents recognized their error, and through subsequent
2  negotiations with plaintiff, agreed that plaintiff could sign the
3  Agreement on August 31, 2009, and return it, which he did.  Id.
4  He also timely submitted a replacement payment for the improperly
5  rejected first payment.  Id.

6  Accordingly, for purposes of this dismissal motion, plaintiff
7  fully and timely complied with all of his obligations under the
8  Forbearance Agreement.

### c. Defendant's Breach.

As discussed above, plaintiff alleges that he fully performed under the Forbearance Agreement, or was excused from timely performance by defendant's breach.  Defendant then breached the agreement by failing to "cause the notice of default to be cancelled," as it specifically promised to do in the Forbearance Agreement.  Complaint ¶ 19.

This breach is critical to plaintiff, since as a direct result, the Trustee was able to rely upon the still-extant Notice of Default to sell the property at auction.  See RfJN Exh. F (Notice of Trustee's Sale).  Had the Notice of Default been cancelled, as promised, it appears that the Trustee could not have conducted the foreclosure sale.  See Cal. Civ. Code § 2924(a)(1) (recording of notice of default is required before the trustee's power of sale can be exercised).

### d. Plaintiff's Damages.

As the court has found, plaintiff's complaint sufficiently alleges that plaintiff made all the forbearance payments in an

1   attempt to save his home. These forbearance payments however,
2   apparently did not cure the delinquency in his loan payments. When
3   defendants sold plaintiff's home at auction, therefore, those
4   payments were simply lost, as they were paid over to defendant in
5   exchange for a broken promise to cancel the Notice of Default.
6   Although plaintiff does not specifically allege "damages," the
7   court infers from the complaint that these payments were among his
8   damages.

9   Accordingly, the court finds that plaintiff has sufficiently
10  alleged breach of the Forbearance Agreement. Defendant's motion
11  to dismiss the rescission claim for failure to allege a breach of
12  contract will therefore be denied.

13  **B.   Breach of Contract To Modify Loan Terms.**

14  The title of plaintiff's second cause of action indicates that
15  he alleges breach of contract for defendant's failure to modify his
16  loan terms. Defendant correctly points out that there is no such
17  contract language nor any other allegation of any such agreement.
18  However, the substantive allegations of this breach claim make
19  clear that plaintiff is suing for defendant's failure to "consider"
20  plaintiff for a loan modification, and to do so in good faith.

21  Defendants' obligation to consider plaintiff for a loan
22  modification arises from the Forbearance Agreement, discussed
23  above. In that Agreement defendant SPS promises that if plaintiff
24  timely makes the forbearance payments, SPS

25  > will consider reviewing Borrower for a modification of
        Borrower's loan terms to a more affordable monthly
26  > payment amount.

13

Complaint Exh. 3 ¶ 2.2. As discussed above, plaintiff did timely make his forbearance payments, thus triggering defendant's contractual obligation to consider plaintiff for modified monthly payments. The complaint goes on to allege that defendant breached this obligation by failing to consider reviewing him for the modification, and to do so in good faith.

Plaintiff's allegations in this regard are: (1) as discussed above, defendant breached that part of this same agreement in which it promised to rescind the notice of default; (2) defendant's agent promised plaintiff that SPS would accept a modified payment of $4,645 per month if plaintiff made his forbearance payments and met other qualifications; (3) plaintiff timely made his forbearance payments and satisfied the other qualifications; (4) defendant accepted those modified payments for months; and (5) defendant, without explanation for why it was changing the terms of the loan modification previously offered by its agent, raised the amount of the modified payment to $7,100 per month. These allegations are sufficient to support plaintiff's claim that defendant breached its promise to consider reviewing him for a loan modification, and to do so in good faith.[12]

Accordingly, the motion to dismiss the second claim will be denied.

---

[12] The court does not, of course, hold that defendant was obligated to provide a loan modification in the amount preferred by plaintiff. However, it did contractually obligate itself to consider plaintiff for a modified loan, and to do so in good faith. The complaint adequately alleges that defendant failed to satisfy this obligation.

14

**C.  Wrongful Foreclosure.**

"California recognizes a cause of action for wrongful foreclosure under equitable principles." Barroso v. Ocwen Loan Servicing, LLC, 208 Cal. App. 4th 1001, 1016 (2nd Dist. 2012). Plaintiff's theory here is that the foreclosure sale should not have taken place at all, since defendant was contractually obligated to cancel the Notice of Default.

Defendants argue that plaintiff's claim for wrongful foreclosure must be dismissed solely on the ground that plaintiff was required to tender the full amount of his arrearage, which he has not done.  In support, defendant cites Sierra-Bay Fed. Land Bank Assn. v. Superior Court, 227 Cal. App. 3d 318, 337 (3rd Dist. 1991).[13]  However, Sierra-Bay involved a claim for negligence, not wrongful foreclosure nor rescission of a trustee's sale. Id. At 337 ("plaintiff does not seek an equitable decree setting aside the trustees' sales").  Its discussion of the elements of wrongful foreclosure are therefore dicta.

Defendant also cites Arnolds Management Corp. v. Eischen, 158 Cal. App. 3d 575 (2nd Dist. 1984) for the proposition that a full tender of the arrearage is needed "to set aside a trustee's sale for irregularities in sale notice or procedure." Id., at 578.  In Arnolds, there was no question about whether the trustee's sale

---

[13] Defendant also relies upon Guerrero v. Greenpoint Mortg. Funding, Inc., 403 Fed. Appx. 154 (9th Cir. 2010), an unpublished, which addressed plaintiff's lack of "standing" to assert a wrongful foreclosure case.  This unpublished order of the Ninth Circuit is "not precedent," Ninth Cir. R. 36-3(a), and it is therefore unclear why defendant cites it.

15

should have taken place at all – the key allegation of this lawsuit. The trustee in <u>Arnold</u> told plaintiff that the trustee's sale was to take place on July 28, 192, when in fact, it was scheduled for May 27, 1982, and it took place on the May date. The plaintiff's lawsuit was based upon this irregularity of notice. It was in this context that the court held that "an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security." <u>Id.</u> At 578.

Defendants also rely upon <u>Abdallah v. United Savings Bank</u>, 43 Cal. App. 4th 1101, 1109 (1st Dist. 1996), <u>cert. denied</u>, 519 U.S. 1081 (1997), which similarly addresses the tender requirement in the context of an irregularity in notice procedure, and a failure to postpone the sale to obtain a better price. It does not address a claim – as pressed here – that the foreclosure sale itself was wrongful and should not have occurred <u>at all</u> because defendants were contractually obligated not to conduct the sale.

Indeed, none of the cases defendants rely upon require tender when there is a challenge to the trustee's right to conduct the sale at all. Rather, they require tender when there is an alleged irregularity in the notice or procedure of the sale.[14]

---

[14] <u>See</u> <u>Karlsen v. American Sav. & Loan Assn.</u>, 15 Cal. App. 3d 112, 121 (1971) (public announcement of sale not properly given, violation of statute regarding sale procedure, and failure to postpone sale); <u>FPCI RE-HAB 01 v. E & G Investments, Ltd.</u>, 207 Cal. App. 3d 1018, 1020 (Cal.App.2.Dist.1989) (plaintiff alleges that defendant "conspired to conduct the sale in a manner calculated to 'chill the bidding' and permit E & G to purchase the property at lower than market value and to cause RE-HAB to lose its security

16

Here, plaintiff does not base his claim on an "irregularity of notice or procedure" in the trustee's sale. Rather, he bases his claim on his assertion that the trustee had no right to conduct the sale at all, since (1) defendants were contractually obligated not to permit the sale by their trustee, and (2) defendants were contractually obligated to withdraw the Notice of Default, the existence of which was the legal predicate of the trustee's sale.

The law does not require plaintiff to tender the purchase price to a trustee who has no right to sell the property at all. In <u>Bank of America, N.A. v. La Jolla Group II</u>, 129 Cal. App. 4th 706 (5th Dist. 2005), for example, the trustee had no right to

---

interest"); <u>Saldate v. Wilshire Credit Corp.</u>, 711 F. Supp. 2d 1126, 1139 (E.D. Cal. 2010) (O'Neill, J.) (failure of trustee to possess promissory note – which turned out to be irrelevant, anyway – and failure "'to give proper notice of the Notice of Default'"); <u>Stebley v. Litton Loan Servicing, LLP</u>, 202 Cal. App. 4th 522, 526 (3rd Dist. 2011) (failure "to fully and fairly explore alternatives to foreclosure").

<u>See also</u>, <u>Chavez v. Recontrust Co.</u>, 2008 WL 5210893 at *6 (E.D. Cal. 2008) (Wanger, J.), in which the court denied the request to set aside a trustee's sale stating, <u>in toto</u>: "'[T]he law is long-established that a trustor or his successor must tender the obligation in full as a prerequisite to challenge of the foreclosure sale,'" <u>quoting</u>, <u>United States Cold Storage v. Great Western Savings & Loan Assn.</u>, 165 Cal. App. 3d 1214, 1222, 212 Cal.Rptr. 232 (1985). Since <u>Chavez</u> relied entirely on the quoted statement from a state case, <u>Cold Storage</u>, this court looks to the state case for guidance. <u>Cold Storage</u>, as with all the other cases, addresses tender in the context of allegedly defective notice, stating: "It would be futile to set aside a foreclosure sale on the technical ground that notice was improper, if the party making the challenge did not first make full tender and thereby establish his ability to purchase the property." <u>Cold Storage</u>, 165 Cal. App. 3d at 1225. To the degree <u>Chavez</u> may be read to require a full tender to a trustee who had no right to conduct the trustee's sale in the first place, this court would respectfully decline to follow it.

17

conduct the foreclosure sale because the homeowner had fully cured the default. The lenders simply forgot to tell the trustee that the default had been cured. There is not even a mention of a tender requirement in the case. Such a requirement would have made no sense, since the trustee had no right to conduct the sale at all.[15]

In this case, it may be that plaintiff has not cured the default.[16] However, he does have a contractual promise from SPS to cancel the Notice of Default if plaintiff satisfied the Forbearance Agreement. It would be bizarre to require plaintiff to tender the full amount of arrearage at a foreclosure sale which should not be taking place at all.

Accordingly, defendants' assertion that plaintiff has not made a tender of the full arrearage is not a basis for dismissal of the wrongful foreclosure claim.

**D.   Unlawful Business Practices.**

Defendant argues that the unlawful business practices act fails because it is dependent upon the other three claims of the complaint, which, in its view, are meritless. Since those claims are not meritless, and will not be dismissed, this claim also will not be dismissed.

Defendant also asserts that plaintiff was in error to rely on

---

[15] It also would have been impossible, since there was no arrearage, the default having been cured.

[16] The Forbearance Agreement states: "The payments under this Agreement do not include amounts necessary to cure the amount in arrears." Complaint Exh. 3 (Recitals ¶ E).

18

the prior allegations of the complaint in making the unfair business practices claim.  The court disagrees.  Plaintiff's practice is fully in accordance with the "short and plain" statement requirement of Fed. R. Civ. P. 8(a).  Plaintiff is not required to re-assert and re-allege all the prior allegations, and indeed was right not to do so.  Those prior allegations make clear what wrong was done to plaintiff and the harm he suffered. Defendant's assertion that plaintiff failed to allege loss of any money or property is simply wrong, as plaintiff has clearly alleged the loss of his home arising from defendants' breach of their contractual obligation to rescind the notice of default, and to consider him (in good faith), for a loan modification.

**E.   The Lis Pendens.**

Defendants move to expunge the lis pendens which plaintiff filed against the property.  Defendants' sole basis is that the lawsuit, which is the basis of the lis pendens, is without merit. As discussed above however, the lawsuit, which contains a proper real estate claim for wrongful foreclosure, is meritorious, or at least, it is not dismissible at this point.  Accordingly, the motion to expunge will be denied.

**IV.  CONCLUSION**

For the reasons set forth above:

1.   Defendant's motion to dismiss (ECF No. 12), is **DENIED**; and

2. Defendant's motion to expunge the lis pendens (ECF No. 19), is **DENIED**.

19

1        IT IS SO ORDERED.

2        DATED:   February 13, 2013.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT